## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| FRANCIS SCOTT HUNT and SUNDRA CHERI HUNT, individually and as Trustee for IAN CHRISTOPHER HUNT, PAUL LEWICKI, LAWRENCE A. MCMAHON and JUDITH J. MCMAHON, PAUL D. CAVANAGH individually and as Trustee for the PAUL D. CAVANAGH TRUST, and VIRGINIA POPE,<br><br>**Plaintiffs,**<br><br>v.<br><br>ENZO BIOCHEM, INC., HEIMAN GROSS, BARRY WEINER, ELAZAR RABBANI, SHARIM RABBANI, JOHN DELUCCA, DEAN ENGELHARDT, and JOHN DOES 1-50,<br><br>**Defendants.** | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | 06 Civ. 00170 (SAS) |
| KEN ROBERTS,<br><br>**Plaintiff,**<br><br>v.<br><br>ENZO BIOCHEM, INC., HEIMAN GROSS, BARRY WEINER, ELAZAR RABBANI, SHARIM RABBANI, JOHN DELUCCA, DEAN ENGELHARDT, and JOHN DOES 1-50,<br><br>**Defendants.** | ) ) ) ) ) ) ) ) ) ) ) | 06 Civ. 00213 (SAS) |
| PAUL LEWICKI,<br><br>**Plaintiff,**<br><br>v.<br><br>ENZO BIOCHEM, INC., HEIMAN GROSS, BARRY WEINER, ELAZAR RABBANI, SHARIM RABBANI, JOHN DELUCCA, DEAN ENGELHARDT, and JOHN DOES 1-50,<br><br>**Defendants.** | ) ) ) ) ) ) ) ) ) ) ) | 06 Civ. 6347 (SAS) |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
## HEIMAN GROSS'S MOTION FOR SUMMARY JUDGMENT

Angelo A. Stio III
**PEPPER HAMILTON LLP**
300 Alexander Park
Princeton, New Jersey 085435
Telephone: 609.951.4125
Facsimile: 609.452.1147

Dated: March 30, 2009

K. Stewart Evans, Jr., Of Counsel
**PEPPER HAMILTON LLP**
600 14th Street, NW
Suite 600
Washington, DC  20005
Telephone: 202.220.1230
Facsimile:  202.220.1665
Counsel for Defendant Heiman Gross

## INTRODUCTION

Paul Cavanagh ("Cavanagh"), Paul Lewicki ("Lewicki"), Virginia Pope ("Pope"), and Ken Roberts ("Roberts"), the four Plaintiffs each assert a single fraud claim against Defendant Heiman Gross ("Gross").  Each of the four Plaintiffs allege that Gross made intentional misrepresentations to them after Enzo Biochem, Inc's ("Enzo") 2000 annual shareholders meeting on January 12, 2000 (the "2000 Meeting") to induce them to purchase or hold Enzo securities.  In particular, they claim that Gross was very positive about Enzo's progress in the clinical trial for its novel genetic potential HIV treatment.  Discovery has shown that one Plaintiff, Paul Cavanagh, never spoke with Gross during the relevant time period, and never made a trading decision based on anything Gross told him.  Another, Paul Lewicki, spoke with Gross just once, and that was outside the relevant time period.  Cavanagh and Lewicki's claims against Gross are frivolous.

Roberts and Pope's fraud claim against Gross are without factual support. Pope spoke with Gross only once, in June or July 2000, after Enzo's stock price had dropped. Pope claims that Gross was very positive about the clinical trial for Enzo's potential HIV treatment, and told her that the trial was on schedule and would move into a Phase II trial, and that Enzo would open another clinic by the end of the year.  Roberts similarly claims that in his several discussions with Gross that Gross was very positive about the potential HIV treatment, reported that Enzo was finishing Phase I and moving into Phase II, and that Enzo hoped to open additional clinics and earn a significant profit once it had a marketable HIV treatment.  In sum and substance, neither Pope nor Roberts alleged that Gross told them anything more than positive puffery and general forward-looking statements.  The Fourth

Circuit, in ruling on Larry Glaser's nearly identical claims, has already found this type of allegations inadequate to support a common law fraud claim.

Moreover, Cavanagh, Lewicki, Roberts, and Pope have no evidence of scienter, no evidence that Gross knew any of his alleged statements were not true when made, and no evidence of any motive for Gross to deliberately deceived them.  While Plaintiffs claim that Defendant Barry Weiner off-loaded 200,000 shares of Enzo stock worth $15 million – a claim that discovery has clearly disproved – they do not allege that Gross sold any Enzo stock, and rightly so.  Gross's tax returns and trading records show that he did not sell a single share of Enzo stock during the relevant time period, i.e., during the months after the 2000 meeting.  Further, his Form 1099s from his consulting work for Enzo show that his salary remained relatively constant from 1997 through 2003, and his tax records show that the compensation he received from Enzo was an insignificant portion of his income.

Because Plaintiffs will not be able to prove either false statements or scienter, and for all of the reasons set forth in Defendants Barry Weiner's and Enzo's (the "Enzo Defendants") summary judgment brief, which Gross also joins, this Court should grant summary judgment dismissing Plaintiffs' Complaints with prejudice.

### STATEMENT OF FACTS[1]

*Gross's Purported Discussions With Plaintiffs*

During depositions, each of the Plaintiffs described his or her purported contacts with Gross.  Cavanagh did not believe he spoke to Gross at or after the 2000 Meeting (Declaration of K. Stewart Evans, dated March 30, 2009 ("Evans Dec.") Ex. A at 82/13-23,

---

[1]  Gross adopts the Enzo Defendants' statement of facts and Local Rule 56.1 Statement.

85/18-21). In any event, he "never ended up buying stock or selling stock because of [Gross's] information" (Evans Dec. Ex. A at 269/3-13).

Lewicki testified that he only spoke with Gross once, in late 2000 or early 2001, for half an hour (Evans Dec. Ex. B at 56/20-25). Gross allegedly assured Lewicki that "everything was fine" with the HIV trial and that Enzo would open a third clinical site in Los Angeles (Evans Dec. Ex. B at 57/13-15). On timing, Gross stated only that everything was "on schedule," though there might be "slight delays" (Evans Dec. Ex. B at 257/22-25). Gross never specified when clinics would open (Evans Dec. Ex. B at 395/8-10).

Pope also admitted that she spoke with Gross only once ever, in June or July 2000, after Enzo's stock price started dropping (Evans Dec. Ex. C at 61/12-16, 217/23-218/10). According to Pope, Gross told her that Enzo was on schedule, would move into a Phase II, and would open another clinic by the end of the year (Evans Dec. Ex. C at 61/6-11, 219/15-19, 336/11-21). Overall, Gross was very positive about Enzo (Evans Dec. Ex. C at 219/20-21).

Roberts claimed to have several discussions with Gross prior to and during 2000 (Evans Dec. Ex. D at 63/11-13). Early in their discussions, Gross described Enzo's antisense technology to Roberts, and allegedly reported that Enzo had a cure for AIDS (Evans Dec. Ex. D at 65/21-23, 98/3-16). Over time, Gross reassured Roberts that "things were going to happen" with the HIV treatment. Gross also allegedly stated that he was buying Enzo stock for his children (Evans Dec. Ex. D at 99/6-10). He reported that Enzo was finishing up Phase I of a trial, which involved 10 patients, and was moving into Phase II (Evans Dec. Ex. D at 92/16-19, 112/7-10, 204/4-8). At some point, Gross told Roberts that Enzo would open treatment clinics (Evans Dec. Ex. D at 320/21-321/14), reviewed with Roberts the potential

3

for profit from a marketable HIV treatment (Evans Dec. Ex. D at 122/22-123/5), and claimed that Enzo's stock could go up to $200 per share (Evans Dec. Ex. D at 231/6-11).  On the other hand, Gross never provided Roberts with a timetable in which Enzo would begin a Phase II trial or open "treatment" clinics (Evans Dec. Ex. D at 204/4-8).

*Gross Does Not Sell Any Enzo Stock During The Relevant Time Period*

Although Gross owned Enzo stock during the relevant time frame, the first half of 2000, he did not sell any Enzo securities during 2000 and 2001 (Declaration of Heiman Gross, dated March 30, 2009 ("Gross Dec.") at ¶¶ 3-4, and *Exhibits A and B* to the Gross Dec.).  Further, the income Gross derived from consulting for Enzo remained relatively constant over the years, and is an insignificant portion of Gross's total income (Gross Dec. at ¶¶ 5-6 and *Exhibits B and C* to the Gross Dec.).

## ARGUMENT[2]

1. **GROSS DID NOT MAKE ANY STATEMENTS TO CAVANAGH OR LEWICKI DURING THE RELEVANT TIME PERIOD.**

Cavanagh and Lewicki each testified at deposition that they did not have any discussions with Gross during the relevant time period, much less any discussions in which Gross made actionable misrepresentations.  This Court should accordingly dismiss their claims.

Cavanagh testified that he does not believe he spoke to Gross at or after the 2000 Meeting (Evans Dec. Ex. A at 82/13-23, 85/18-21).  *See*, *e.g.*, *In re IBM Corporate Sec. Litig.*, 163 F.3d 102, 107 (2d Cir. 1998) (finding statement made prior to relevant time period is not actionable); *Hunt v. Enzo Biochem, Inc.*, 530 F. Supp. 2d 580, 601 (S.D.N.Y. 2008)

---

[2] To be clear, Gross specifically joins in the Enzo Defendants' motion for summary judgment on Point I (res judicata), Point III (bankruptcy bar for Lewicki), and Points IV(c) (reasonable reliance), IV(d) (loss causation), and IV(e) (reliance and causation).

(dismissing claims against company director when plaintiffs could not specify his alleged misrepresentations). In any event, Cavanagh "never ended up buying stock or selling stock because of [Gross's] information" (Evans Dec. Ex. A at 269/3-13). *See Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993) (recognizing that "[a] statement cannot be fraudulent if it did not affect an investment decision of the plaintiff"). Based on this testimony, there is no basis for Cavanagh's claim against Gross.

Lewicki faces a similar problem. He testified that he only spoke with Gross once, in late 2000 or early 2001, for half an hour (Evans Dec. Ex. B at 56/20-25). This Court allowed this case to proceed on two loss causation theories – the market learned that Enzo would not be opening treatment clinics by April 2000 because Enzo failed to issue positive reports between the 2000 Meeting and April 2000, and a private placement memorandum UBS prepared on Enzo's behalf acted as a corrective disclosure when disseminated in July 2000. Both of these purported corrective events significantly predate Lewicki's conversation with Gross, which took place after the relevant time frame. Therefore, Lewicki does not have a fraud claim against Gross. *See Mills*, 12 F.3d at 1175 (finding purported misrepresentation made outside relevant time frame could not ground fraud claim).

Because neither Cavanagh nor Lewicki will be able to prove any contact with or statement by Gross during the relevant time period that was in any way casually related to their alleged investment losses, this Court must dismiss their claims.

2.  **PLAINTIFFS CANNOT SHOW THAT GROSS MADE ANY ACTIONABLE MISREPRESENTATIONS ON WHICH THEY REASONABLY RELIED.**

While Plaintiffs Pope and Roberts both claim that they spoke with Gross during the relevant time period, their testimony shows that Gross only made general positive and forward-looking statements about Enzo's progress in its HIV trial. Moreover, if the

5

statements attributed to Gross by Pope and Roberts were otherwise actionable, any reliance on the purported statements by Pope and Roberts was unreasonable as a matter of law.

Pope spoke with Gross only once ever, in June or July 2000, after Enzo's stock price started dropping (Evans Dec. Ex. C at 61/12-16, 217/23-218/10). According to Pope, Gross told her that Enzo was on schedule, would move into a Phase II, and would open another clinic by the end of the year (Evans Dec. Ex. C at 61/6-11, 219/15-19, 336/11-21). Overall, Gross was very positive about Enzo (Evans Dec. Ex. C at 219/20-21).

Roberts had several discussions with Gross prior to and during 2000 (Evans Dec. Ex. D at 63/11-13). At one point early in their discussions, Gross described Enzo's antisense technology to Roberts, and allegedly reported that Enzo had a cure for AIDS (Evans Dec. Ex. D at 65/21-23, 98/3-16). Over time, Gross reassured Roberts that "things were going to happen" with the HIV treatment. Gross also allegedly stated that he was buying Enzo stock for his children (Evans Dec. Ex. D at 99/6-10). He reported that Enzo was finishing up Phase I of a trial, which involved 10 patients, and was moving into Phase II (Evans Dec. Ex. D at 92/16-19, 112/7-10, 204/4-8). At some point, Gross told Roberts that Enzo would open treatment clinics (Evans Dec. Ex. D at 320/21-321/14), reviewed with Roberts the potential for profit from a marketable HIV treatment (Evans Dec. Ex. D at 122/22-123/5), and claimed that Enzo's stock could go up to $200 per share (Evans Dec. Ex. D at 231/6-11). On the other hand, Gross warned Roberts when a patient's death in a trial that was not affiliated with Enzo delayed the trial process (Evans Dec. Ex. D at 156/9-14). Further, Gross never provided

6

Roberts with a specific timetable in which Enzo would begin a Phase II trial or open "treatment" clinics (Roberts: 204/4-8).[3]

Initially, Plaintiffs' claims that Gross generally stated that things were going well with the HIV trial, the trial remained on schedule, and Enzo hoped to move into a Phase II trial and eventually market the potential HIV treatment at a significant profit are the same positive, forward-looking statements that the Fourth Circuit already held could not support a claim against Enzo. *See Glaser v. Enzo Biochem, Inc.*, No. 03-2188, 2005 U.S. App. LEXIS 4598, at *18-20, 25 n.6 (4th Cir. Mar. 21, 2005), *cert. denied*, 549 U.S. 1304 (2007). New York law supports the same result. Simply put, general positive statements, such as those attributed to Gross by Roberts and Pope, are not actionable statements as a matter of law. *See Hampshire Equity Partners II, L.P. v. Teradyne, Inc.*, No. 05-cv-2279, 2005 U.S. App. LEXIS 28817, at *3 (2d Cir. Dec. 20, 2005) (holding statements "in the nature of opinion or puffery" are not actionable); *In re IBM Corporate Sec. Litig.*, 163 F.3d at 106-07 (finding statements of future intent or future projections are not actionable); *Leykin v. AT&T Corp.*, 423 F. Supp. 2d 229, 247 (S.D.N.Y. 2006) (finding statement that business had "performed very well" was non-actionable because of its generality); *In re Bristol-Myers Squibb Sec. Litig.*, 312 F. Supp. 2d 549, 558 (S.D.N.Y. 2004) (finding statements that FDA would likely approve drug for market were not actionable). Notably, none of Plaintiffs allege that Gross specified a time frame within which Enzo would begin a Phase II trial or open centers to market the potential

---

[3] Lewicki's sole discussion with Gross was at the end of 2000, months after the alleged corrective disclosures lowered Enzo's stock price. To the extent that this Court considers that discussion, however, it was no different in substance from Pope's discussion with Gross. Gross allegedly assured Lewicki that "everything was fine" with the HIV trial and that Enzo would open a third clinical site in Los Angeles (Evans Dec. Ex. B at 57/13-15). On timing, Gross stated only that everything was "on schedule," though there might be "slight delays" (Evans Dec. Ex. B at 257/22-25). Gross never specified when clinics would open (Evans Dec. Ex. B at 395/8-10).

treatment, or included other specific details which could potentially turn his future-looking statements into present false statements. Further, Gross disclosed to Roberts at least one event that was completely unrelated to Enzo's trial but that nonetheless delayed the trial, which should have put Roberts on notice that intervening events could delay the trials and any potential FDA approval.

Roberts claims that Gross at some point told him that Enzo had a "cure" for AIDS. Assuming that Gross's purported statement fell within the first half of 2000, any reliance on this statement was unreasonable as a matter of law. According to Roberts, he had believed since at least 1996 or 1997 that Enzo had cured AIDS, the public was aware of the cure, and marketing of the treatment was imminent (Evans Dec. Ex. D at 65/15-20, 76/18-77/8, 81/10-16, 127/16-17, 204/20-25). During early to mid-2000, as reviewed in the Enzo Defendants' brief, Enzo sent out press releases and gave interviews to newspapers and magazines reporting that its potential HIV treatment was still in an early testing stage and that further testing would be required to determine whether the potential treatment was safe and effective. *See* Enzo Defendants' Mem. of Law at pp. 6. Roberts admitted that Enzo faxed him materials like press releases, but that he generally threw them away without paying attention to them (Evans Dec. Ex. D at 330/13-331/4).[4]

Given Enzo's specific and repeated statements that it was still early in the testing process and that additional testing would be required to evaluate the efficacy, Roberts' long-standing belief that Enzo had cured AIDS and purported reliance on an alleged statement by Gross that Enzo had a "cure" for AIDS were not reasonable as a matter of law. *See McCoy v. Goldberg*, 883 F. Supp. 927, 936 (S.D.N.Y. 1995) (finding plaintiff did not reasonably rely

---

[4] Pope similarly admitted that she has never looked at an Enzo company filing, press release, or financial statement (Evans Dec. Ex. C at 30/6-20, 211/17-215/5).

on defendants' oral representations of likelihood partnership value would rise when defendants' written materials disclosed risks of investment); *Sable v. Southmark/Envicon Capital Corp.*, 819 F. Supp. 324 (S.D.N.Y. 1993) (same); *see also In re Progress Energy, Inc. Sec. Litig.*, 371 F. Supp. 2d 548, 552 (S.D.N.Y. 2005) (stating truism that there is no omission where purportedly omitted facts are publicly disclosed).

While Roberts (and all of the Plaintiffs in this case) seeks an insurance policy through this litigation because the testing of Enzo's potential HIV treatment has taken substantial time, courts have long recognized that "the investing public is well aware that drug trials are exactly that: trials to determine the safety and efficacy of experimental drugs. And so trading in the shares of companies whose financial fortunes may turn on the outcome of such experimental drug trials inherently carries more risk than some other investments." *New Jersey Carpenters Pension & Annuity Funds v. Biogen IDEC Inc.*, 537 F.3d 35, 48 (1st Cir. 2008) (dismissing fraud claims against pharmaceutical company). While Plaintiffs may have purposely buried their heads in the sand to the significant and concrete risks posed by the business of Enzo, and indeed any similar biotech company, that does not make Gross liable for their reckless refusal to appreciate the process of FDA review of a proposed drug or, in this case, a novel genetic treatment. Nor does it excuse their failure to review or recognize Enzo press releases and other publicly disclosed information with regard to Enzo's clinical trial process, all of which clearly showed Enzo's potential HIV treatment was still in an early testing stage and that further testing would be required to determine whether the potential treatment was safe and effective.

9

3.       **PLAINTIFFS CANNOT SHOW GROSS INTENDED TO MISLEAD THEM.**

Plaintiffs' scienter allegations against Gross theorize that Gross conspired to hype Enzo's progress on its potential HIV treatment to pump Enzo's stock price so insiders could dump tens of millions of dollars of Enzo stock. Plaintiffs rely on this convoluted conspiracy theory because Gross did not sell any Enzo securities during 2000 and 2001, and the income Gross derives from consulting for Enzo has remained constant and is but an extremely insignificant portion of his total income (Gross Dec. at ¶¶5-6 and *Exhibits B and C* to the Gross Dec.). Accordingly, Plaintiffs have not alleged any "concrete" benefit, or any benefit at all, to Gross from the alleged scheme. *See In re Pfizer, Inc. Sec. Litig.*, 538 F. Supp. 2d 621, 635 (S.D.N.Y. 2008) (noting plaintiffs had not pleaded that defendants sold stock during relevant time period). Plaintiffs have no other evidence to suggest that Gross intended to mislead them, or that he believed that his statements about Enzo's progress in the HIV trial were not true. Plaintiffs therefore cannot show that Gross knew that his purported statements were false or that he intended to mislead them.

Finally, the alleged misrepresentations attributed to Gross, i.e., that the HIV trial was proceeding well and on schedule and Enzo hoped to get approval for a Phase II trial and to open treatment clinics, were specifically addressed in, and in some respects contradicted by, publicly available information in Enzo's S.E.C. filings and press releases, and in reported interviews Enzo officers provided to journalists. *See* Enzo Defendants' Memo of Law at pp. 6. This publicly available information significantly undercuts any allegation that Gross intended to defraud Plaintiffs. *See In re Pfizer, Inc. Sec. Litig.*, 538 F. Supp. 2d at 637 (noting that availability of publicly available, contradictory information "weakens any inference" of intent to defraud).

**CONCLUSION**

For the reasons set out in the Enzo Defendants' Memorandum of Law and in this Memorandum of law, this Court should grant Gross summary judgment dismissing with prejudice all of the claims asserted by Plaintiffs against him.  Neither, Cavanagh and Lewicki had any discussions with Gross during the relevant time period.  Therefore, they could not have possibly based their investment decisions regarding Enzo during the relevant time period on any statement made to them by Gross.  The statements attributed to Gross by Roberts and Pope during the relevant time period are only general positive and forward-looking statements about Enzo's progress in its HIV trial the Fourth Circuit already considered and held could not support a claim against Enzo.  *See Glaser v. Enzo Biochem, Inc.*, No. 03-2188, 2005 U.S. App. LEXIS 4598, at *15-16, 22 n.6 (4th Cir. Mar. 21, 2005), *cert. denied*, 549 U.S. 1304 (2007).  Moreover, given that Enzo in early to mid 2000 sent out press releases and gave interviews to newspapers and magazines reporting that its potential HIV treatment was still in an early testing stage and that further testing would be required to determine whether the potential treatment was safe and effective, Pope and Roberts could not have reasonably relied upon the statements they attributed to Gross as a matter of law.  Finally, Plaintiffs cannot show that Gross knew that his purported statements were false or that he intended to mislead them.

      HEIMAN GROSS
      By Counsel


      <u>/s/ Angelo A. Stio III</u>
      Angelo A. Stio III
      **PEPPER HAMILTON LLP**
      300 Alexander Park
      Princeton, New Jersey 085435
      Telephone: 609.951.4125
      Facsimile: 609.452.1147

      K. Stewart Evans, Jr., Admitted Pro Hac Vice
      **PEPPER HAMILTON LLP**
      600 14th Street, NW
      Suite 600
      Washington, DC  20005
      Telephone: 202.220.1230
      Facsimile:  202.220.1665

## CERTIFICATE OF SERVICE

I certify that on March 30, 2009, a true and correct copy of the foregoing Co-Defendant Heiman Gross's Memorandum of Law In Support of Defendant Heiman Gross's Motion for Summary Judgment was mailed, first-class postage prepaid, to the following:

>Donald H. Chase
>Morrison Cohen LLP
>909 Third Avenue, 27th Floor
>New York, New York 10022-4731

>and

>Dan Brecher, Esq.
>Law Offices of Dan Brecher
>99 Park Avenue, 16th Floor
>New York, New York 10016
>Attorneys for Plaintiffs

/s/ K. Stewart Evans, Jr.

K. Stewart Evans, Jr.