UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FRANCIS SCOTT HUNT and SHUNDRA CHERI HUNT, individually and as Trustee for IAN CHRISTOPHER HUNT, PAUL LEWICKI, LAWRENCE A. MCMAHON and JUDITH J. MCMAHON, PAUL D. CAVANAGH, individually and as Trustee for the PAUL D. CAVANAGH TRUST, and VIRGINIA POPE, | No. 06-cv-00170 (SAS) |

Plaintiffs,

v.

ENZO BIOCHEM, INC., HEIMAN GROSS, BARRY WEINER, ELAZAR RABBANI, SHARIM RABBANI, JOHN DELUCA, DEAN ENGELHARDT, and JOHN DOES 1-50,

Defendants.

| | |
|---|---|
| KEN ROBERTS, | No. 06-cv-00213 (SAS) |

Plaintiff,

v.

ENZO BIOCHEM, INC., HEIMAN GROSS, BARRY WEINER, ELAZAR RABBANI, SHARIM RABBANI, JOHN DELUCA, DEAN ENGELHARDT, and JOHN DOES 1-50,

Defendants.

| | |
|---|---|
| PAUL LEWICKI, | No. 06-cv-06347 (SAS) |

Plaintiff,

v.

ENZO BIOCHEM, INC., HEIMAN GROSS, BARRY WEINER, ELAZAR RABBANI, SHARIM RABBANI, DEAN ENGELHARDT, and JOHN DOES 1-50,

Defendants.

## PLAINTIFFS' 56.1 STATEMENT AND
## STATEMENT OF CONTESTED MATERIAL FACTS

Plaintiffs, by their attorneys, Law Offices of Dan Brecher, respectfully submit the following statement of contested facts pursuant to Local Rule 56.1.

<u>AS TO DEFENDANT ENZO BIOCHEM AND WEINER</u>

In opposing Defendants Enzo and Weiner's motion, the following responds to the numbered paragraphs in their 56.1 statements:

A.    <u>Enzo Business</u>

      1 through 3.    Not contested.

B.    <u>The Process for Obtaining Government Approval for Gene Therapy Studies</u>

      4 through 18.  Not contested.

C.    <u>Enzo's Proposed HIV Treatment</u>

      19 through 21. Not contested.

      22.    The RAC committee minutes, at pages 51, lines 6-8, show that Enzo overstated the potential benefits to patients.  See Brecher Declaration, Exhibit J.

      23.    Not contested.

      24.    This is dissimilar to certain Enzo statements at the 2000 annual shareholders meeting (the "2000 ASM"):  "It's all over but the shouting."; "it works, they both wor,k"; the comparison to a Roach Motoel:  "The virus goes in but does not come out,"; and that "Enzo would be opening three more clinics, totaling four by the end of fiscal year 2000 to treat HIV and AIDS patients.  Weiner predicted that Enzo would be able to treat 9,500 patients per clinic at a charge of $30,000 per patient." at the 2000 ASM.  See, Roberts' Second Amended Complaint at ¶ 25 – 28; Weiner's Deposition at page 404, Exhibit E to Brecher Declaration; and Jernigan's Deposition at pages 18 and 40 and Jernigan notes at pages MJ011, Exhibits L, M and N.

25.    Dr. Fung and Dr. Mickelson stated their disagreement.  (See RAC Minutes, Brecher Declaration, Exhibit J at page 55, lines 7-9, and at page 58, lines 13-19; and page 53, lines 7-9 and line 21; as well as page 53 to page 54 line 25)

26.    This is an assertion by Enzo, which was not verified by RAC, NIH or FDA.

27.    Any statement allegedly made at the 20000 ASM is contested; Enzo admits it had taped the meeting, but has lost the tape.  See Brecher Declaration, Exhibit E.

28.    See 27 above.

29.    See 27 above.

30.    Not contested.

31.    See 25 above.

D.    The RAC Meeting

32.    Not contested.

33.    See 25 above.

34.    See 25 above.

35.    See 25 above.

36.    Mickelson disputes this, at page 53, line 17-18 and lines 21-23, and Conant and Thalenfeld (who was also at the RAC meeting), could not explain it.  See RAC Minutes, Brecher Declaration Exhibit J, at 62, 64-65.

37.    See RAC Minutes, Brecher Declaration Exhibit J, at p. 22, line 20 to page 23, line 6.

38.    See 36 above.

39.    See 36 above.

3

40.     See 25 and 36 above.  This was not "minor", as now claimed by the Enzo Defendants.

E.     The Biotech Bubble in 1999 and 2000

41 and 42.     Not contested.

43.     Defendants are engaged in conjecture about the cause, nature and timing of the Biotech Bubble.

44.     Not contested.

F.     Plaintiffs Invest in Enzo stock.

45 through 57.  Not contested.

G.     Enzo's 2000 Annual Shareholder Meeting

58.     See 27 Above.

59.     See 27 above.

60.     See 27 above.

H.     Enzo's Public Disclosures and Cautions About
       Its Potential HIV Treatment Before and After the 2000 Meeting

61 and 62.     Not contested.

63.     See 27 above.

64 through 66.  Not contested.

I.     Plaintiffs Contacts with Enzo After the 2000 Meeting

67 through 69.  Not contested.

70.     Roberts testified to a number of admitted meetings with Gross, and Gross admitted meeting with Roberts at Enzo's offices and at Burger Heaven.  Enzo has marked as "Confidential" even Gross' expense reimbursement slips evidencing a number of meetings Gross had with Roberts and with Somkin, the broker for Roberts and Pope, who testified they also

4

relied on what Somkin told them that Gross had told Somkin about the progress and results of Enzo's clinical trials and other supposed positive developments that turned out to be false. See Brecher Declaration Exhibit A.

J.    Plaintiffs' Trading

    i.    Cavanagh

        71 through 73. Not contested.

        74.    Cavanagh relied on Enzo's statements at the 2000 ASM. See Brecher Declaration, Exhibit B, page 196.

        75.    Cavanagh literally was in a coma, suffering from an as yet unknown illness for several years, is elderly and frail, yet he still hopes that Enzo will somehow succeed with its patents, and he so testified.

        76 through 80. Not contested. See 75 above.

    ii.    Lewicki

        81 through 84. Not contested.

        85.    Lewicki testified he would have sold all of his Enzo securities, had he known that the statements made at the 2000 ASM were false. See Brecher Declaration, Exhibit B, Lew. page 171.

        86.    Not contested.

        87.    See 27 above.

    iii.    Pope

        88 and 89.    Not contested.

        90.    See Brecher Declaration, Exhibit A, Pope page 50.

        91 and 92.    Not contested.

93.    Pope testified she relied on what she heard the Enzo Defendants say at the 2000 ASM, and on what Gross told Somkin and Roberts, which they then told her. See Brecher Declaration, Exhibit A, Pope pages 61 and 182.

94.    Not contested.

95.    Pope testified she would have sold all of her Enzo securities, had she known that the statements made at the 2000 meeting were false. See Brecher Declaration, Exhibit A.

iv.    Roberts

96 through 99. Not contested.

100.    Roberts testified he would have sold all of his Enzo securities, had he known that the statements made at the 2000 meeting were false. Roberts actually increased his holdings after the 2000 ASM, from 70,000 shares at the time of the 2000 ASM to 128,700 shares by July 25, 2000. See Brecher Declaration, Exhibit A, Roberts at p. 362, and Exhibit O.

K.    Pope and Lewicki sue their brokers

101.    Pope was on a modeling assignment and out of contact with her broker, so, before she left, she gave her broker a sell order with instructions to sell the Enzo shares at a certain price if it decreased in price while she was unavailable. See 90 above.

102 through 106. Not contested.

L.    Lewicki Sues Morgan Stanley Dean Witter and Poloforn:

107 through 109. Not contested.

110.    This is conjecture. (Chase Dec. Exhibit B at L250/18-251/25)

111.    Not contested.

M.    Plaintiffs' Alleged Damages

6

112.    The tax returns are not prepared on LIFO basis, and do not reflect losses that are unrealized but are present in the lost value of securities that remain unsold.  The chart of Cavanagh's Enzo transactions in 2000 that was sent to Defendants in February 2009 showed losses in 2000 of several million dollars, in part based on losses in 164,211 shares of Enzo stock Cavanagh held on January 12, 2000.  See Exhibit D to Brecher Declaration.  He increased his holdings to 235,747 shares on July 25, 2000.

113.    See 112 above.  Cavanagh added at least 15,500 shares of Enzo from January 12, 2000 to March 30, 2000 at an average cost of $78 7/8 per share for a cost of $1,222,375 and a loss of at least $224,750 just on those shares, if the court looks at just the price drop from $72 to $57.50 a share on July 25, 2000 when the UBS Private Placement Memorandum was distributed.  See Brecher Declaration, Exhibit D.

There is nothing in Dura Pharmaceuticals that explicitly holds that (a) an investor who suffers damages from specifically identified transactions cannot recover losses from those transactions, or (b) that the investor's other trading in the company's stock is relevant to a claim for damages based on the isolated transactions.  See In re CIGNA Corp. Sec. Litig., 459. Supp. 2d 338, 354 (E.D. Pa. 2006).

114.    See 112 above.  Pope provided Defendants with amended tax return information showing losses calculated on LIFO basis which totaled $271,892 in losses on Enzo trading in 2000.  See Brecher Declaration Exhibit D.

115.    See 114 above.

116.    See 114 above.

117.    Lewicki's expert calculated that Lewicki lost $977,971.14 in his Morgan Stanley account, the majority of it in Enzo transactions in 2000, and his Schedule D for 2000

7

shows hundreds of thousands of dollars in losses in Enzo transactions from January 2000 through July 25, 2000.  See Brecher Declaration Exhibit D.

118.    Lewicki's Schedule D to his tax return for 2000 shows losses of $527,781 just between January 12, 2000 and July 25, 2000, and total losses of $738,000 in Enzo trading in 2000.  See Brecher Declaration, Exhibit D.

N.    Enzo's contacts with Roberts' Home State of California

119 through 122.    The contacts do not amount to "doing business" under the California long-arm statute.  See Vons Companies v. Seabest Foods, Inc., 926 P.2d 1085 (Cal. 1996).

123 and 124.    The discussion was to be of an AIDS charity event Roberts conducted annually at his California residence.  See Brecher Declaration, Exhibit E.

125 through 127.    Enzo does not claim to have any offices or employees in California, only an agent, and none in 2000.  These alleged California sales are not further described and appear to be shipped from New York on a wholesale basis.  Enzo does not claim to have registered as a foreign corporation doing business in California.

128 through 131.    There is no showing how a shareholder's location in one state affects jurisdiction over a corporation in another state.  By these statements, Enzo appears to suggest it is available for suit whenever large shareholders may move, wherever the internet may accessed, wherever Enzo's shares are traded, and wherever Barry Weiner takes trips, attends scientific and other conferences, or meets with potential licensors and researchers.  See Enzo 56.1 Statement at paragraphs 128 to 131.

132.    Not contested.

O.    Enzo's contacts with Cavanagh's Home State of Massachusetts

133.    See 119 through 122, and 125 above.  Enzo does not claim to have registered as a foreign corporation doing business in Massachusetts.

134.    See 125 above.  Enzo does not claim to have had a sales representative in Massachusetts in 2000 or 2001.  See Enzo 56.1 Statement at paragraph 134.

135 and 136.   See 119 through 122.

137 to 140.     See 128 to 131 above.

P.    <u>Larry Glaser's Agreement with Plaintiff's Lewicki, Cavanagh and Pope</u>

141 to 145.    Exhibit E to the Chase Declaration is not signed by Glaser.  It is an agreement between the named instant Plaintiff and Rovell, not with Glaser.  See Chase Declaration, Exhibit E.

146.    Plaintiffs did not withhold documents constituting their communications with Glaser based on the "attorney-client privilege".  Indeed, Plaintffs subsequently delivered documents signed by them and sent to Glaser, which Glaser did not sign.  See Chase Declaration Exhibit E.

147 and 148.   Plaintiffs paid Rovell, not Glaser.  The payment was Rovell's retainer.  See Chase Declaration Exhibit E, retainer agreement.

149.    Not contested.

150.    The so-called reaffirmation signed by Lewicki and Pope in 2009 is not signed by Glaser.  See Chase Declaration, Exhibit E.

Q.    <u>Glaser's Action against Defendants</u>

151 through 153.    These Defendants represented to the Virginia courts that there had not been sales of Enzo securities by the children's trusts, just gifts, and Weiner repeatedly

9

testified in the deposition in the bankruptcy proceedings that he was not aware of any taping of the 2000 ASM. See Brecher Declaration, Exhibits E, H and I.

154.    Not contested.

155.    The Plaintiffs' allegations are not limited to or by what the Fourth Circuit identified as actionable, but are contained in their respective amended complaints, which include additional specific statements made at the 2000 meeting regarding the establishment of four clinics by April 2000, among other allegations. See the Plaintiffs respective amended complaints, and Brecher Declaration Exhibits L, M and N.

156 and 157. Not contested. The Fourth Circuit decision focused on <u>Dura</u>.

158.    See 155 above.

159.    Defendants have admitted they lost the tape of the 2000 meeting and, therefore, Defendants cannot argue that what was said by them at the 2000 meeting is undisputed. Moreover, Defendants in paragraph 159 of their 56.1 statement imply Glaser's notes are verbatim, accurate and actually intended to be a quote, and, Defendants are implying that these notes were confirmed by Glaser to be accurate and complete, which is not what Glaser actually testified to when Defendants deposed him. Moreoever, Weiner admitted Engelhardt said "it works" when he testified. See Chase Declaration Exhibit G and Brecher Declaration Exhibit E.

160.    Not contested.

161.    Again Defendants seek to have this court find a statement made by Engelhardt at the 2000 ASM to be undisputed, when it is disputed in plaintiffs' pleadings and the defendants have lost the tape and admit that the transcript has been edited by them. See Brecher Declaration Exhibit E.

R.    Lewicki's Bankruptcy Proceeding

162 to 172.    Lewicki's present counsel informed the Bankruptcy Trustee of the instant action and of the Morgan Stanley claim that was settled.  The Bankruptcy Trustee wishes Lewicki to remain a party plaintiff, and has stated her desire to retain Plaintiffs' present counsel after she negotiates a sharing arrangement with Lewicki on behalf of certain creditors, if Lewicki's action is not dismissed.  See Brecher Declaration Exhibit C.

## AS TO DEFENDANT GROSS' 56.1 STATEMENT

1.    Defendant Gross met numerous times with Plaintiff Roberts, and with George Somkin, Roberts' and Pope's stock broker, providing them with false reports of Enzo's successful clinical trials, at Enzo's offices and at the Burger Chef coffee shop, as shown on his expense reimbursement forms, and in testimony elicited at the depositions of Gross, Roberts and Pope.  See Brecher Declaration at Exhibits A, L, M and N.

2.    Defendant Gross repeatedly lied to Plaintiff Cavanagh, who reported the lies to Enzo prior to the 200 ASM after which Gross never spoke to Cavanagh again.  See Brecher Declaration at Exhibit B.

3.    Gross disseminated material information to investors.  See Brecher Declaration at Exhibits L, M and N.

## ADDITIONAL MATERIAL FACTS

1.      Defendants say nothing in their moving papers about Roberts' huge losses in Enzo transactions. Roberts lost millions of dollars in Enzo transactions between January 12, 2000 and July 25, 2000, lost millions of dollars in calendar 2000, and lost millions of dollars overall in Enzo transactions. See Brecher Declaration Exhibit O.


Dated:      New York, New York
            April 30, 2009

                              LAW OFFICES OF DAN BRECHER


                              By: _____
                              Dan Brecher (DB-5308)
                              99 Park Avenue, 16th Floor
                              New York, New York 10016
                              (212) 286-0747

                              *Attorneys for Plaintiffs Paul Lewicki,*
                              *Paul D. Cavanagh, Ken Roberts and*
                              *Virginia Pope*