UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FRANCIS SCOTT HUNT and SHUNDRA CHERI HUNT, individually and as Trustee for IAN CHRISTOPHER HUNT, PAUL LEWICKI, LAWRENCE A. MCMAHON and JUDITH J. MCMAHON, PAUL D. CAVANAGH, individually and as Trustee for the PAUL D. CAVANAGH TRUST, and VIRGINIA POPE,<br><br>Plaintiffs,<br><br>v.<br><br>ENZO BIOCHEM, INC., HEIMAN GROSS, BARRY WEINER, ELAZAR RABBANI, SHARIM RABBANI, JOHN DELUCA, DEAN ENGELHARDT, and JOHN DOES 1-50,<br><br>Defendants. | No. 06-cv-00170 (SAS) |
| KEN ROBERTS,<br><br>Plaintiff,<br><br>v.<br><br>ENZO BIOCHEM, INC., HEIMAN GROSS, BARRY WEINER, ELAZAR RABBANI, SHARIM RABBANI, JOHN DELUCA, DEAN ENGELHARDT, and JOHN DOES 1-50,<br><br>Defendants. | No. 06-cv-00213 (SAS) |
| PAUL LEWICKI,<br><br>Plaintiff,<br><br>v.<br><br>ENZO BIOCHEM, INC., HEIMAN GROSS, BARRY WEINER, ELAZAR RABBANI, SHARIM RABBANI, DEAN ENGELHARDT, and JOHN DOES 1-50,<br><br>Defendants. | No. 06-cv-06347 (SAS) |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION
TO THE MOTION OF DEFENDANTS FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ...............................................................................1

ARGUMENT.......................................................................................................4

POINT I.    THE MISREPRESENTATIONS BY THE ENZO DEFENDANTS
TO THE VIRGINIA COURT AND TO THIS COURT ..........................4

POINT II.    PLAINTIFFS' DECEASED ATTORNEY REPRESENTED TO THE
VIRGINIA COURT ON THE RECORD THAT ITS DISMISSAL OF
THE GLASER CASE KEPT HIM FROM FILING PLAINTIFFS'
CASES BECAUSE ENZO THREATENED SANCTIONS ......................6

POINT III.    PLAINTIFFS SUFFERED LOSSES IN ENZO SECURITIES .................6

POINT IV.    PLAINTIFFS ALL RELIED ON THE FALSE STATEMENTS
MADE BY ENZO AT THE 2000 ANNUAL SHAREHOLDER
MEETING IN NEW YORK.............................................................7

POINT V.    DEFENDANTS' ACTS, AND THOSE OF IMMEDIATE
RELATIVES OF ENZO CONTROL PERSONS, IN SELLING
ENZO SECURITIES IN MARCH AND APRIL OF 2000, IN THE
ENZO DEFENDANTS' MISPRESENTATIONS TO THE
COURTS REGARDING SUCH SALES, AND IN "LOSING" THE
TAPE OF THE 2000 ANNUAL SHAREHOLDERS MEETING,
MERIT ADVERSE INFERENCES .....................................................8

POINT VI.    DEFENDANTS ACTED WITH SCIENTER ........................................9

POINT VII.    LEWICKI'S 2004 BANKRUPTCY PROCEEDINGS CANNOT
BE THE BASIS FOR DISMISSAL PRIOR TO TRIAL .......................12

POINT VIII.    RES JUDICATA IS NOT APPLICABLE AS AGAINST THE
PLAINTIFFS ..............................................................................13

POINT IX.    THE DEFENDANTS DID NOT HAVE A SUFFICIENT PRESENCE
IN CALIFORNIA OR IN MASSACHUSSETTS, AND, TOGETHER
WITH THEIR DECEPTIONS ON THE COURTS, TOLLING OF
THE STATUTES OF LIMITATIONS IS NOT MERITED ....................14

CONCLUSION....................................................................................................15

# TABLE OF AUTHORITIES

Page

Cases

Clarence Ruffin v. Kinder Morgan Liquids Terminal, LLC, No. A-2589-07T12589-O7T1)
(Sup. Ct. of New Jersey, App Div, Jan. 2, 2009),...................................................................12

Cohen v. Koenig, 25 F.3d 1168, 1173 (2d Cir. 1994) .............................................................9

Dura Pharmaceuticals, Inc. v. Broudo, 544 U.S. 336 (2005) ...............................................6

EDP Med. Computer Sys., Inc. v. United States, 480 F.3d 621, 624 (2d Cir. 2007) ...........13

Ernst & Ernst v. Hochfelder, 425 U.S. 185 (1976)...............................................................10

Green v. Santa Fe Industries, Inc., 70 N.Y. 2d 244, 519 N.Y.S. 2d 793 (1987) .................14

Goldman v. Belden, 754 F.2d 1059 (2d Cir. 1985) ...............................................................11

Hallinan v. Republic Bank & Trust Co., 519 F. Supp. 2d 340 (S.D.N.Y. 2007).................14

Marino v. Hyatt Corporation, 793 F.2d 427 (1st Cir. 1986).................................................15

In re CIGNA Corp. Sec. Litig., 459 Supp.2d 338 (E.D. Pa. 2006).........................................7

In re Merrill Lynch & Co., Inc. Research Reports Securities Litigation,
305 F. Supp. 2d 323 (S.D.N.Y. 2004).....................................................................................14

In re Time Warner Inc. Sec. Litig., 9 F.3d 259 (2d Cir. 1993)..............................................10

Kalnit v. Eichler, 264 F.3d 131 (2d Cir. 2001).....................................................................12

Turkish v. Kasenetz, 27 F.3d 23 (2d Cir. 1994) ......................................................................9

Vons Companies v. Seabest Foods, Inc., 926 P.2d 1085 (Cal. 1996)....................................15

Plaintiffs, through their attorneys, Law Offices of Dan Brecher, respectfully submit this memorandum of law in opposition to Defendants' motion for summary judgment.

## PRELIMINARY STATEMENT

Defendants argue that the dismissal of Glaser's claims in Virginia operates as res judicata here, even though that dismissal related to different securities transactions by different persons and entities, at different dates and was under Virginia law, which is not at all applicable to any claims here, and even though that dismissal was prior to discovery of Defendants in those proceedings. Glaser did have some limited discovery in his personal bankruptcy proceedings, in which Weiner was deposed and successfully covered up the fact that the Enzo 2000 annual shareholders meeting (the "2000 ASM") was taped by Enzo and that the tape was subsequently "lost", facts that were only learned recently in the instant action. The Virginia courts were repeatedly told by Enzo's counsel, that no sales of Enzo securities were made in March or April of 2000 by the Weiner or Rabbani children's trusts, a representation which is demonstrably untrue, and which Defendants made to this Court too.

Key to the allegations and to the proofs here is what was stated by Barry Weiner and Enzo Biochem, Inc. (the "Enzo Defendants") at the 2000 ASM in New York City, which the four plaintiffs all attended. The Enzo Defendants admit they had taped that meeting, and, without any meaningful explanation, also admit the tape of the meeting is missing. Accordingly, the Plaintiffs are entitled to an inference, at least for purposes of the Court's consideration of the Defendants' summary judgment motions, that allegations in their amended complaints as to what specifically was said by the Enzo Defendants at that 2000 ASM in New York are correctly stated in the Plaintiffs' amended complaints.

1

Plaintiffs all testified that they did not know that they had been lied to by the Enzo Defendants at the 2000 ASM. Clearly, had they known the Enzo Defendants had outright lied to them, they would not have traded any further in Enzo securities. Defendants' citations to other pages of testimony, in which the elderly and in ill health Plaintiffs, Cavanagh and Roberts, and the relatively uneducated and financially unsophisticated Pope, who makes her living as a model, gave answers Defendants seek to construe another way, do not do more than to raise an issue for trial in light of the Plaintiffs' testimony cited below, in which each of the Plaintiffs specifically testified that he or she would not have retained their Enzo securities and would not have purchased additional Enzo securities after the 2000 ASM shareholder meeting if he or she knew the statements made at that meeting, as alleged in the amended complaints, were untrue.

Attached as Exhibits A and B to the Declaration of Dan Brecher, dated April 30, 2009 ("Brecher Declaration"), are excerpts from each of the Plaintiffs depositions showing that, at the least, there are issues for trial here as to reliance, reasonableness of such reliance and loss causation.

Essentially, the Defendants are seeking to benefit from what appears to be their purposeful "loss" of material evidence and from misrepresentations the Defendants have repeatedly made of material facts, misrepresentations made on the record in the Glaser case and in the instant actions. Analogous to the "fruit-of-the-poisonous tree" doctrine, the delays Defendants obtained through such deceptions on the courts should not be countenanced, and it is respectfully submitted that this Court should not permit Defendants to obtain dismissals of Plaintiffs' claims on the technical grounds of res judicata and statutes of limitations given the Defendants' deceptions and withholdings of material evidence described in Point I below.

Lewicki's Bankruptcy Trustee, Barbara Edwards, was notified by Plaintiffs' counsel that the Defendants were seeking dismissal of Lewicki's claims based on alleged non-disclosures by Lewicki in his personal bankruptcy proceedings in 2004. Ms. Edwards confirmed to Plaintiffs' counsel, today, that she was willing to negotiate a sharing on behalf of certain creditors with Lewicki who she would agree to have remain as a party plaintiff here and that she wished to retain Plaintiffs' counsel, if the action is not dismissed (see Exhibit C to Brecher Declaration). Again, at best, the Enzo Defendants' argument as to Lewicki's personal bankruptcy does nothing more than raise an issue for trial. As the case law cited in Point VII below shows, Lewicki has done what is required, in notifying the Trustee, and the Trustee has stated her willingness to allow Lewicki to continue as a party plaintiff herein.

The wishful thinking in the Enzo Defendants' assertions that Pope cannot prove damages is manifest, and, again only raises an issue for trial. It is clear that (1) her tax return was not prepared on a LIFO basis, and (2) she had an amended return prepared after her accountant's recent death because he had clearly prepared an erroneous charting of her losses, including mistakenly listing day trading that had not occurred. The amended return calculations she had prepared by her new accountant showing Pope's losses were sent to Defendants several months ago, evidencing $271,892 of losses suffered in Enzo securities transactions by Pope in 2000, calculated on a LIFO basis.

Similarly, charting of losses by the other Plaintiffs were provided in discovery, showing that they all suffered substantial losses on the specific transactions related to the false statements made to them at the 2000 ASM. The documentation of Plaintiffs' losses provided in discovery to Defendants include those that are Exhibits D and O to the Brecher Declaration.

The withholding of the tape of the 2000 ASM, the misrepresentations to the public and to the courts that there were no sales by the children's trusts established by Weiner and the Rabbanis in March and April 2000, among other inequitable actions of the Enzo Defendants, militate against summary dismissal of Plaintiffs' complaints as against them.

## ARGUMENT

### POINT I.
### THE MISREPRESENTATIONS BY THE ENZO DEFENDANTS
### TO THE VIRGINIA COURT AND TO THIS COURT

The Enzo Defendants told both this Court and the Virginia courts that the Enzo officers and directors, Weiner and the Rabbanis, had not made any sales of Enzo stock in 2000, just gifts to their children's trusts, which were not sales.  Defendants also did not disclose the profits that the hedge funds run by Lindsay Rosenwald, the son-in-law of Enzo's largest shareholder, had made shorting substantial amounts of Enzo stock and that his hedge funds made about $6 million in profits in 2000 doing so; several million dollars in profits in short-sale transactions at the end of March and in April 2000 alone, precisely when the Weiner and Rabbbani children's trusts were selling their shares.  Weiner covered up the existence of the tape of the 2000 ASM at each of his depositions taken in Glaser's bankruptcy proceedings in 2001 and 2002, twice claiming he did not know of any tape of the 2000 ASM.  The Enzo Defendants claim to have no explanation as to who at Enzo taped the meeting, nor do the Enzo Defendants have any explanation for the subsequent "loss" of the tape.  Exhibit E to the Brecher Declaration shows that, in February 2000, Weiner was working with Enzo's public relations firm on a substantially edited transcript made from the tape, and also shows Weiner's cover-up testimony in 2001 and 2002 in Glaser's bankruptcy proceedings, where he denied any knowledge of such a tape.  Even now, the Enzo Defendants seek to mislead this Court, proferring an edited "transcript", misconstruing Glaser's

4

notes, and even claiming there is no dispute about what was actually said by them at the 2000 ASM.

Exhibit F to the Brecher Declaration are provisions that Defendants have acknowledged to be applicable to the Weiner and the Rabbani children's trust agreements, all established in March 2000. They also acknowledged that Weiner's 91 year old father is the named Trustee in all three of the Weiner and Rabbani trusts. While the name of the trust suggests it is a "children" trust, Barry Weiner remained a beneficiary of The RJ Children Trust, and Barry Weiner retained the power to unilaterally change trustees in the trust. The so-called "children" trusts established by Elazar Rabbani and Sharim Rabbani are similar, accordingly to testimony of Weiner, so, apparently, Elazar Rabbani and Sharim Rabbani each remained a beneficiary of the trust and retained the power to unilaterally change trustees in their respective trusts, with or without cause. Defendants have not produced the Rabbanis' trust agreements. Weiner and the Rabbanis control such trusts, and each of them should have each properly reported his rights in such trust, and should have publicly reported sales by his trust. None of them did so, and their attorneys were able to hide from the Virginia courts the fact of millions of dollars of sales in the Weiner and in the Rabbanis' children's trusts that occurred in transactions in March and April 2000. Transactions by the children's trusts in April 2000 appear to include shorting of stock, although Defendants have not produced all documents requested that relate to such transactions. In April 2000, at the same time insiders and their relatives were selling and shorting the Enzo stock, Enzo issued a press release stating it knew of no reason for the decline in the price of its stock (Exhibit G to the Brecher Declaration). Also, Exhibit H to the Brecher Declaration contains excerpts showing misleading representations made by Defendants' attorneys to the Virginia courts, on several occasions, that no sales were made by the trusts.

## POINT II.
### PLAINTIFFS' DECEASED ATTORNEY REPRESENTED TO THE VIRGINIA COURT ON THE RECORD THAT ITS DISMISSAL OF THE GLASER CASE KEPT HIM FROM FILING PLAINTIFFS' CASES BECAUSE ENZO THREATENED SANCTIONS

Having obtained dismissal from the Virginia court based, in part, on false representations to the Virginia court by Enzo, and threatening Plaintiffs' former counsel with sanctions if he filed the Plaintiffs' cases, Enzo now seeks dismissal of the Pope, Cavanagh and Roberts claims based on the delay in filing, a delay that resulted directly as the "fruit of- the-poisonous-tree" described above. Exhibit I to the Brecher Declaration contains a portion of the transcript of Virginia proceedings in which Michael Rovell, Glaser's attorney in the Virginia proceedings, stated that Enzo had threatened him with sanctions if he filed the instant Plaintiffs' claims.

## POINT III.
### PLAINTIFFS SUFFERED LOSSES IN ENZO SECURITIES

Documents, including those attached as Exhibits D and O to the Brecher Declaration, provided to the Defendants in discovery, show that:

(i)      Pope lost $271,892 in Enzo securities transactions in 2000;

(ii)     Lewicki's Schedule D for 2000 showed losses of $527,781 just between January 12, 2000 and July 25, 2000, and total losses of $738,000 in Enzo trading in 2000;

(iii)    Cavanagh lost $473,767.70 in specific Enzo securities transactions from March 17, 2000 to July 17, 2000. Cavanagh owned 235,747 shares of Enzo stock on July 25, 2000, priced at $72 a share as of the close on July 24, 2000, and he lost several million dollars as of the close on July 25, 2000 just in that day alone. Should the Court deem the UBS PPM a corrective disclosure or a partial corrective disclosure, and the precipitous drop in stock price that day be considered as includable damages calculated pursuant to Dura Pharmaceuticals, Inc. v. Broudo, 544 U.S. 336 (2005), such damages for Cavanagh are calculated to be $3,418,331

based on a $14.50 drop in Enzo's stock price on July 25, 2000. (See Exhibit D to the Brecher Declaration); and

        (iv)    Roberts lost millions in Enzo in securities transactions in 2000, whether calculated for the period of January to July 25, 2000 or for the entire year (See Exhibit O to the Brecher Declaration). Defendants do not state anything to contest that fact in their Rule 56.1 Statement.

There is nothing in the Dura Pharmaceuticals decision that explicitly holds that (a) an investor who suffers damages from specifically identified transactions cannot recover losses from those transactions, or (b) that the investor's other trading in the company's stock is relevant to a claim for damages based on the isolated transactions. See In re CIGNA Corp. Sec. Litig., 459 Supp.2d 338, 354 (E.D. Pa. 2006).

### POINT IV.
### PLAINTIFFS ALL RELIED ON THE
### FALSE STATEMENTS MADE BY ENZO AT THE
### 2000 ANNUAL SHAREHOLDER MEETING IN NEW YORK

Exhibits A and B to the Brecher Declaration, consist of excerpts from depositions of Plaintiffs Pope, Roberts, Cavanagh and Lewicki, respectively, which show that each of the Plaintiffs would not have traded in Enzo securities had they known the statements made by Enzo at the 2000 ASM were false. The court is asked to take note that even the "transcript" of the 2000 ASM submitted by the Defendants with their motions does not include any forward-looking statement provisions. At oral argument before the Virginia appellate court, the Defendants were told that the filings with the Securities and Exchange Commission ("SEC filings") were not considered disclosures that cured the false nature of certain statements if made at the 2000 ASM. Plaintiffs allege that, at the 2000 ASM, the Enzo Defendants stated: "It's all over but the shouting"; that "although the FDA would not allow the Company to say that it cured

AIDS, the company had, in fact, killed the virus"; and, that the therapy would be commercialized, and clinics would be opening in three months. (See Cavanagh and Pope Third Amended Complaints, at ¶ 26 – 29; Roberts' Second Amended Complaint at ¶ 25 – 28; Lewicki's Second Amended Complaint at ¶ 24 – 27; and Exhibits L, M and N to the Brecher Declaration.)

## POINT V.
### DEFENDANTS' ACTS, AND THOSE OF IMMEDIATE RELATIVES OF ENZO CONTROL PERSONS, IN SELLING ENZO SECURITIES IN MARCH AND APRIL OF 2000, IN THE ENZO DEFENDANTS' MISPRESENTATIONS TO THE COURTS REGARDING SUCH SALES, AND IN "LOSING" THE TAPE OF THE 2000 ANNUAL SHAREHOLDERS MEETING, <u>MERIT ADVERSE INFERENCES</u>

The Court ordered the Enzo Defendants to investigate and report as to the missing tape of the 2000 ASM. As shown by Exhibit E to the Brecher Declaration, the Enzo Defendants cannot deny having had possession of the tape (it is obvious Enzo taped its own meeting, but in its report to the Court Enzo does not even identify who taped the meeting). Enzo cannot explain how, why, when or where the tape went missing. Instead it has the temerity to present and quote from what Exhibit E shows is its heavily edited "transcript". Enzo also refers to Glaser's notes, but then appears to misinterpret and miscast Glaser's notes, which do not serve to refute the allegations of the amended complaints, are clearly incomplete and are as inconclusive as the edited "transcript" the Enzo Defendants proffer. Indeed, an independent third party's contemporaneous handwritten notes confirm that Weiner and Engelhardt did say some of the actionable quotes alleged in the amended complaints. (See Exhibits L, M and N to the Brecher Declaration.)

8

It is respectfully requested that adverse inferences be ordered here, at least for purposes of deciding Defendants' summary judgment motions: that the statements specifically alleged to have been made by the Enzo Defendants at the 2000 ASM in the Plaintiffs' amended complaints were made by the Enzo Defendants at the 2000 ASM; that there were sales made by and on behalf of Weiner and the Rabbanis in the spring of 2000 that yielded multi-million dollar profits; and, that short-selling by the son-in-law of Enzo's largest shareholder in the spring of 2000 yielded multi-million dollar profits to his hedge funds. The Enzo Defendants cannot now deny the multi-million dollar April 2000 sales by the children's trusts, nor can they deny that Rosenwald's hedge funds profited in the millions in 2000 by short-selling Enzo securities during the period that the children's trusts were selling Enzo shares. Even Rosenwald so testified. (See Exhibit L to the Brecher Declaration.)

## POINT VI.
## DEFENDANTS ACTED WITH SCIENTER

Defendants' sales of millions of dollars of Enzo securities, through their children's trusts, together with the contemporaneous short selling of Enzo securities by the son-in-law of Enzo's largest shareholder, in the spring of 2000, and their sales of Enzo securities in 2000 from which they received a total of approximately ten million dollars of net profits, provide a strong inference of scienter. Under Second Circuit case authority, while "'great specificity [is] not required with respect to ... allegations of ... scienter,'" a plaintiff must provide "'a minimal factual basis'" for its conclusion that a defendant acted with scienter. See Cohen v. Koenig, 25 F.3d 1168, 1173 (2d Cir. 1994) (citations omitted). A "minimal factual basis" suffices if the allegations give rise to a "'strong inference' of scienter." See generally Turkish v. Kasenetz, 27 F.3d 23, 28 (2d Cir. 1994). There are two distinct ways in which a plaintiff may plead scienter without direct knowledge of defendants' state of mind. First, a plaintiff can allege "facts

9

constituting circumstantial evidence of either reckless or conscious behavior." In re Time Warner Inc. Sec. Litig., 9 F.3d 259, 269 (2d Cir. 1993). Second, a plaintiff can allege facts "establishing a motive to commit fraud and an opportunity to do so." In re Time Warner, 9 F.3d at 269. Plaintiffs' complaints, and documented support submitted herewith, do both.

Present in the instant actions are facts showing that the Enzo Defendants did not report multi-million dollars of profits in sales by members of the immediate families of Enzo control persons in the spring of 2000, and that they "lost" key evidence. These documented facts raise a strong inference that the Enzo Defendants acted intentionally or recklessly, satisfying the scienter requirement. In Ernst & Ernst v. Hochfelder, the Court held that the Securities Exchange Act requires "some element of scienter" and cannot be read to impose liability for "wholly faultless conduct," "negligent conduct alone," or acts conducted in "good faith." 425 U.S. 185 (1976). The Court indicated that recklessness -- which does not impose liability for negligent, faultless, or good faith conduct -- could satisfy the scienter requirement since "[i]n certain areas of the law recklessness is considered to be a form of intentional conduct ...." Ernst & Ernst, 425 U.S. at 193 n.12.

Plaintiffs have demonstrated such conscious or reckless behavior by the Enzo Defendants as stated above, and also in delineating a series of misstatements and omissions by the Enzo Defendants, specifically detailing the claims of fraudulent behavior, such as occurred at the 2000 ASM, in communicating to these Plaintiffs that the FDA would not allow Enzo to state that it can cure AIDS, but Enzo essentially told Plaintiffs, with a wink, "but we can say:" "We killed the virus," and "It works". SEC filings do not constitute curative disclosure for such direct statements. That was the view of the Fourth Circuit as told to counsel in the Glaser Proceedings.

For example, <u>Goldman v. Belden</u>, sustained a complaint's allegations of scienter based on an assertion that "failure to qualify ... bullish statements was intended to permit individual defendants to profit from an inflated market price before the truth became known." 754 F.2d 1059, 1070 (2d Cir. 1985).  Here, it is clear that Weiner and the Rabbanis had their motivation: the payout to their children's trusts on profits in the Enzo securities transactions.  Weiner and the Rabbanis remained as beneficiaries of the children's trusts, and in continued control of the trusts, with power to remove and replace the Trustee, Weiner's elderly father, in all of the children's trusts.  Acting together with Engelhardt, Gross and others, they put out bullish statements intended to promote the price of Enzo stock.  The Enzo Defendants cashed in to the tune of millions of dollars in the spring of 2000.

Scienter is also established under a second approach:  facts indicating conscious and reckless behavior.  As discussed above, recklessness may be the basis for a finding of scienter.

The Private Securities Litigation Reform Act ("PSLRA") has not changed the requisite standard of pleading scienter that is relevant here.  The Second Circuit continues to apply the pre-PSLRA standard.  In amending the Securities Exchange Act, Congress' intent was to alter the pleading standard with respect to class action strike suits appearing in the federal courts.  The PSLRA, as further amended by the Securities Litigation Uniform Standards Act of 1998 ("SLUSA"), applies to "covered securities" that are "listed on a national securities exchange" and to "class actions."  Here, the Plaintiffs' situation is clearly not a class action, nor are they making securities act claims; they are asserting common law fraud claims.  In amending the Securities Exchange Act, Congress changed the liability standard with respect to certain types of forward-looking statements, but declined to disturb the recklessness standard in any other respect in Section 10(b) suits.  There is no provision in the PSLRA that generally eliminates recklessness

11

as a standard of liability in private securities fraud actions under Rule 10b-5, and, in fact, the PSLRA carefully carves out precluding recklessness liability only in two enumerated contexts. The Second Circuit view is that the PSLRA codified a pleading standard similar to the one previously enunciated by the Second Circuit. See generally Kalnit v. Eichler, 264 F.3d 131 (2d Cir. 2001) (affirming the existing method of pleading scienter "survive[d] the PSRA").

Cavanagh testified that he told Weiner, before the 2000 ASM, that Gross had lied to him; Roberts testified that he had met with Gross numerous times at Enzo's offices and at the Burger Heaven restaurant, at which times Gross told him that the clinical trials were going well and reinforced Robert's belief that Enzo had developed a treatment for AIDS that was already helping patients, which Gross also had told Somkin, the broker for Roberts and Pope. Gross should have known better, and these statements evidence scienter.

## POINT VII.
## LEWICKI'S 2004 BANKRUPTCY PROCEEDINGS CANNOT BE THE BASIS FOR DISMISSAL PRIOR TO TRIAL

As shown by Exhibit C to the Brecher Declaration, the New Jersey Bankruptcy Trustee has been notified of these proceedings. Today, she informed Plaintiff's counsel that she does not seek to remove Lewicki as a party plaintiff here, and that, if his amended complaint is not dismissed, she intends to negotiate a sharing in the claim, on behalf of certain of Lewicki's creditors, and to retain Plaintiffs' counsel. Therefore, it is respectfully submitted that Lewicki remains a proper party plaintiff.

While not controlling law, Plaintiff refers this Court to the decision in Clarence Ruffin v. Kinder Morgan Liquids Terminal, LLC, No. A-2589-07T12589-O7T1) (Sup. Ct. of New Jersey, App Div, Jan. 2, 2009), a New Jersey case which reversed a lower court decision which had dismissed a matter on similar grounds, and stated that the Trustee should be notified and allowed

to determine whether to prosecute the claims on behalf of the creditors of the debtor's estate. That notification was made by Plaintiff Lewicki, and the Trustee has indicated, assuming the Lewicki action is not dismissed, she would want Lewicki's action to proceed with a negotiated sharing in a recovery, if any.

## POINT VIII.
## RES JUDICATA IS NOT APPLICABLE AS AGAINST THESE PLAINTIFFS

The doctrine of res judicata "bars later litigation of an earlier decision that was (1) a final judgment on the merits, (2) by a court of competent jurisdictions, (3) in a case involving the same parties or their privies, and (4) involving the same cause of action." EDP Med. Computer Sys., Inc. v. United States, 480 F.3d 621, 624 (2d Cir. 2007) (internal citations, alteration and quotation marks omitted).

Defendants cite to retainer agreements Plaintiffs made with their now deceased attorney, that were not signed by Glaser, let alone that there is no provision in the retainers for signing by any of the other named plaintiffs in the Glaser, et als. v. Enzo Biochem, Inc., et als. Virginia proceedings (the "Glaser Proceedings"). Defendants also cite to a very recent 2009 document, also not signed by Glaser, to argue as to point (3) in EDP above, that there was privity between these Plaintiffs and the plaintiffs in the Glaser Proceedings. In the absence of any agreement signed by Glaser or any other plaintiff during the pendency of the Glaser Proceedings, the argument of privity fails.

Nor should these Defendants be allowed to argue that the privity requirement of res judicata is satisfied in the instant case through the Glaser Proceedings. Under New York law of preclusion, privity exists between the current litigant and the prior litigant if the prior litigant was vested with authority to represent the current litigant in the prior proceeding or if the current litigant exercised some degree of actual control over the presentation of the prior litigant's case.

13

<u>Hallinan v. Republic Bank & Trust Co.</u>, 519 F. Supp. 2d 340 (S.D.N.Y. 2007).

With the Rovell retainer being unsigned by any of the plaintiffs in the Glaser Proceedings, it is respectfully submitted that, at the least, an issue for trial remains even as to the Enzo Defendants' contention that the instant plaintiffs were in privity with the plaintiffs in the Glaser Proceedings.

Here, there can be no showing by the Enzo Defendants that in the Glaser Proceedings there was a vesting of Glaser with authority to represent any of the instant Plaintiffs in the Glaser Proceedings, nor is there any showing that any of the instant Plaintiffs exercised some degree of actual control over the presentation of Glaser's case. See <u>In re Merrill Lynch & Co., Inc. Research Reports Securities Litigation</u>, 305 F. Supp. 2d 323 (S.D.N.Y. 2004).

Also, where the claims asserted, the interests represented, the law applied and other material aspects of the instant Plaintiffs' actions are not in all respects identical to Glaser's action, such as time frames, specific transactions and meetings, privity is not involved and res judicata should not apply. See <u>Green v. Santa Fe Industries, Inc.</u>, 70 N.Y. 2d 244, 519 N.Y.S. 2d 793 (1987).

Thus, it is respectfully submitted, that giving the Glaser Proceedings judgment res judicata effect here, against these Plaintiffs, would violate due process.

**POINT IX.**
**THE DEFENDANTS DID NOT HAVE A SUFFICIENT PRESENCE**
**IN CALIFORNIA OR IN MASSACHUSSETTS, AND, TOGETHER WITH**
**THEIR DECEPTIONS ON THE COURTS,**
<u>**TOLLING OF THE STATUTES OF LIMITATIONS IS NOT MERITED**</u>

Enzo alleges it did business with two universities, in California and Massachusetts, sold products through some distributors and independent agents, that Weiner attended some conferences and met with some people in those states, that its stock was traded in those states

14

and that Internet access to information about Enzo was available to people in California and Massachusetts, among a hodge podge of activities alleged as reasons not to toll the statutes of limitations as to Roberts and Cavanagh. It is respectfully submitted that the activities listed by Enzo fail to meet the requirements of "doing business" within the meaning of the long arm statutes of California and Massachusetts.

Even under California's broad long-arm statute, the activities in California alleged by the Enzo Defendants fail to meet the requirements of "doing business" as such alleged activities were not substantial, continuous and systematic, and the Plaintiffs' claims here did not arise out of Enzo's alleged California activities. See Vons Companies v. Seabest Foods, Inc., 926 P.2d 1085 (Cal. 1996). Similarly, even though the Massachusetts long arm statute has been broadly interpreted, the reach of the provision only applies when the cause of action arises out of the transaction of business. See Marino v. Hyatt Corporation, 793 F.2d 427 (1st Cir. 1986).

Enzo does not say that it ever actually registered in California or Massachusetts as a foreign corporation doing business in those states.

Given the numerous deceptive statements of Enzo to the courts, and the "missing" tape, it is respectfully submitted that it would be inequitable to not toll the statutes of limitations in favor of Plaintiffs here.

15

## **CONCLUSION**

The Defendants' Motions for Summary Judgment should be denied as there remain material issues for trial.

Dated:   April 30, 2009
         New York, New York

                                          LAW OFFICES OF DAN BRECHER

                                          By:_____
                                          Dan Brecher (DB-5308)
                                          99 Park Avenue, 16th Floor
                                          New York, New York 10016
                                          (212) 286-0747

                                          *Attorneys for Plaintiffs Paul Lewicki,*
                                          *Paul D. Cavanagh, Ken Roberts and*
                                          *Virginia Pope*